**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **JOSE GABRIEL CORRO,** | ) | |
| **ID # 1504908,** | ) | |
| **Petitioner,** | ) | |
| **vs.** | ) | **No. 3:11-CV-2490-M (BH)** |
| | ) | |
| **RICK THALER, Director,** | ) | **Referred to U.S. Magistrate Judge** |
| **Texas Department of Criminal** | ) | |
| **Justice, Correctional Institutions Division,** | ) | |
| **Respondent.** | ) | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to Special Order 3-251, this case has been referred for findings, conclusions, and recommendation. Based on the relevant findings and applicable law, the petition for writ of habeas corpus under 28 U.S.C. § 2254 should be **DENIED** with prejudice.

## I. BACKGROUND

Petitioner challenges three convictions for possession of a controlled substance with intent to deliver and a conviction for possession of a firearm by a felon in causes 2-06-670, 2-06-271, 2-06-672, and 2-06-273. Respondent is Rick Thaler, Director of TDCJ-CID.

### A. Factual and Procedural History

On December 20, 2006, the State indicted obtained four separate indictments against petitioner for possession with intent to deliver methamphetamine, cocaine, and heroin, and for being a felon in possession of a firearm on or about October 3, 2006. (Clerk's Record ("C.R."):4).[1] He pleaded not guilty and was tried before a jury in Rockwall County on April 21-24, 2008. (C.R.:4-5). The state appellate court recounted the evidence presented at trial as follows:

> Deputy Sheriff Chad Young testified he was working night

[1] There are four separate clerk's records for petitioner's four cases, but the relevant pages are the same in each record.

shift and was patrolling on I-30 looking for possible intoxicated drivers. He parked in a grassy section so that he could watch the eastbound traffic. As he was watching the traffic, a car passed him and the passenger turned his whole body to look at Young and "gave a surprised look" that was "suspicious." Because that was uncommon, Young followed the car. As the driver changed from the merging lane into the center lane, the driver swerved "over each line on each side of it." Young also testified that it was early in the morning and the car was coming from an area with bars and places to drink "relatively close." Young believed all of these things indicated the driver might be intoxicated so he stopped the car for failing to maintain a single lane.

When Young asked the driver, Sarrah Debusk, for her driver's license, she told Young she did not have one. The passenger, appellant, gave his driver's license to Young and told him the car was appellant's and he had insurance on the car. Young then ran a routine warrant check and discovered appellant had outstanding arrest warrants. Young arrested appellant and placed him in the patrol car. According to Young, both appellant and Debusk then gave him permission to search the car. When he did so, Young found, among other things, a purple bag with a "small caliber, black semiautomatic weapon," 9.27 grams of heroin, 36.03 grams of methamphetamine, and 14.32 grams of cocaine in the dash behind the glove box. Young also found a red duffel bag on the passenger side of the car in the back seat. The duffel bag contained "a large number of rubber gloves, male clothing, and a digital scale with white powder residue." There was also a blue backpack with male clothing, a scanner, and a second set of scales with white residue in the trunk of the car. Appellant told Young the clothing in the blue backpack belonged to him, but neither of the bags belonged to him. Debusk told Young the drugs and the gun were hers.

Officer Jimmie Rico testified he works in the Special Crimes Unit for the Rockwall County Sheriff's Department and his duties include performing narcotics investigations. Although he spoke with both appellant and Debusk the night they were arrested, he did not gather any information from them. Rico explained to the jury that the narcotics Young found were packaged for resale. He also testified that, in his experience, possession of digital scales indicates that the person buys large quantities of a narcotic and then uses the scales to individually package it for distribution. Finally, Rico testified that considering the criminal history of Debusk and appellant, the location where the narcotics were found, and the male clothing found in the

> car, he would conclude the narcotics found in the car belonged to appellant. According to Rico, he had past experiences where a girlfriend would claim ownership of drugs in an effort to protect their boyfriend.
>
> Debusk testified that although she told Young the drugs were hers, the drugs belonged to appellant. According to Debusk, appellant supplied her with drugs on a daily basis. She was using heroin and speed the night she was stopped and did not realize the amount of drugs that were in the car. She told Young the gun and the drugs belonged to her because she loved appellant, knew he had just been released from prison, and did not want him to have to go back. Debusk explained that certain letters between her and appellant claiming the drugs belonged to Andrew were not the truth.
>
> Appellant testified the drugs did not belong to him. According to appellant, Debusk was having an affair with a man named Andrew and the drugs belonged to him. Appellant believed the police coerced Debusk into testifying the drugs belonged to him, by frightening her with the threat of a long prison sentence. He also testified that Young lied about the traffic stop.
>
> After hearing this and other evidence, the jury found appellant guilty of all four charges against him.

*Corro v. State*, 2009 WL 1912691, Nos. 05-08-00640-CR, 05-08-00641-CR, 05-08-00642-CR, 05-08-00643-CR, slip op. at *1-2 (Tex. App.–Dallas, July 6, 2009, pet. ref'd). The jury found petitioner guilty of all charges, and after he pled true to two enhancements, the trial court sentenced him to thirty-five years. (C.R.:3; R. 6:39-43).

On direct appeal, petitioner alleged that the trial court erred in denying his motion to suppress, that exculpatory evidence was withheld by the State, that his right to a speedy trial was violated, that the jury charge was erroneous, and that the evidence was legally and factually insufficient to support his convictions for possession with intent to deliver a controlled substance. *Corro*, slip op. at *1. Petitioner's convictions were affirmed on direct appeal, and his petitions for discretionary review (PDR) were refused on January 27, 2010. *See* PD-1085-09 through PD-1088-

09. Petitioner filed his initial state habeas applications challenging all four convictions on November 18, 2010. (State Habeas Transcript "S.H.Tr." WR-37,417-03 through WR-37,417-06 [event date 11/18/2010] at covers). He contended that: 1) appellate counsel was ineffective for failing to ensure that a video of the initial stop was included in the appellate record, for failing to argue that the State used perjured testimony at trial, and for failing to object to the State's brief in several respects; 2) Deputy Young and the prosecutor intimidated Sarrah Debusk to commit perjury at trial; 3) Deputy Young fabricated evidence and testified falsely about his initial stop of petitioner's car; and 4) the prosecutor withheld exculpatory evidence, i.e., the original arrest report. (S.H.Tr.[WR-37,417-03, event date 11/18/2010 at 8-11, 25). The Court of Criminal Appeals denied these writs without a written order on December 22, 2010. *See Ex parte Corro*, WR-37,414-03 through WR-37,414-06 (Tex. Crim. App. Dec. 22, 2010).

On June 30, 2011, petitioner filed a second set of state writ applications in all four cases that were dismissed on September 7, 2011, as an abuse of the writ pursuant to Article 11.07, § 4 of the Texas Code of Criminal Procedure. *See Ex parte Corro*, WR-37,414-07 through -10 (Tex. Crim. App. Sept. 7, 2011).

**B. <u>Substantive Claims</u>**

On September 14, 2011, petitioner mailed his petition for federal habeas relief raising the following grounds for relief:

(1) his appellate attorney rendered ineffective assistance of counsel by failing to:

-adequately argue a Fourth Amendment claim;

-argue that the prosecutor's closing argument was prejudicial

-argue that the evidence was insufficient to support his conviction for felon in possession of a firearm;

-designate for appellate review a video of petitioner's arrest;

–argue unfair prejudice with regard to immigration issues raised at trial; and

-object that the transcript of the trial had been tampered (ground one);

(2) the state appellate court violated his equal protection rights by denying his claim that the initial search and seizure was illegal and committed plain error in its analysis of the Fourth Amendment and jury charge claims (grounds two and three);

(3) the prosecution committed misconduct by:

-knowingly using false testimony by Sarrah Debusk; and

-withholding exculpatory evidence that establishes petitioner's actual innocence (grounds four and six);

(4) the evidence was legally insufficient to support his convictions (ground five); and

(5) the cumulative errors in his case violated his due process rights (ground seven).

(Pet. at 6-7). Respondent filed a response on February 2, 2012, and provided the state court records. Petitioner filed a reply brief on March 5, 2012.

**II. PROCEDURAL BAR**

Petitioner has raised a total of seven grounds for relief in his federal petition. The majority of his first ground (asserting that counsel was ineffective on appeal), and his second, third, and seventh grounds were raised at the state level in state habeas applications that were dismissed by the Court of Criminal Appeals as subsequent writs under Article 11.07 § 4 of the Texas Code of Criminal Procedure. This article prohibits a claim from being raised in a subsequent habeas application unless: 1) it was not and could not have been raised in the previous application because the factual or legal basis was unavailable at the time; or 2) the claim contains sufficient facts establishing by a preponderance of the evidence that but for a violation of the United States Constitution, no rational juror would have found petitioner guilty beyond a reasonable doubt. *See*

TEX. CODE CRIM. PROC. ANN. art 11.07 § 4(a) (Vernon 2007).

In general, federal courts may not review a state court decision that rests on an adequate and independent state procedural default unless the habeas petitioner can establish either "cause" for the default and "prejudice attributable thereto" or demonstrates that the failure to consider the federal claims will result in a "fundamental miscarriage of justice." *Harris v. Reed*, 489 U.S. 255, 262 (1989). When the last state court to review a claim clearly and expressly states that its judgment rests on a procedural bar, the procedural default doctrine generally bars federal review. *See id.*; *Lowe v. Scott*, 48 F.3d 873, 875 (5th Cir. 1995). "[A]rticle 11.07 § 4 is an adequate and independent state procedural ground to bar federal habeas review and ... has been strictly and regularly applied since 1994." *Smith v. Johnson*, 216 F.3d 521, 523 (5th Cir.2000).

In his reply brief, and in his second state writ applications, petitioner contends that he was unable to raise the claims in his second state writ applications in his first state writ applications because his legal materials were confiscated by prison authorities. (Reply at 3; S.H.Tr.[WR-37,417-07]:4-5). The Supreme Court has held that cause is shown for procedural default only where a petitioner can show that some objective external factor impeded his efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). While petitioner has alleged an external factor, he has not shown that this factor prevented him from raising claims regarding appellate counsel's representation and the state appellate court's decision in his first state writs. Even assuming that petitioner has shown prejudice for failure to raise these claims earlier, he has not shown prejudice because he has not shown that the alleged errors at his trial infected his entire trial with error of constitutional dimensions such that he was denied fundamental fairness at trial. *Id* at 493. The claims petitioner raised in his subsequent writ applications are primarily claims that

his appellate counsel was deficient in some way or that the appellate court incorrectly decided a point of law. He has not shown that his trial was fundamentally unfair, only that he disagrees with the appellate court's analysis. As for his claim that cumulative errors in his case have violated his due process rights, petitioner's claims of prosecutorial misconduct and sufficiency of the evidence will be addressed on their merits, and the remainder involve either alleged violations of state evidentiary law. (S.H.Tr.[WR-37,417-07]:12). Prejudice has not been shown.

Petitioner has also not shown a fundamental miscarriage of justice if these claims are not considered. The miscarriage of justice exception is "confined to cases of actual innocence, 'where the petitioner shows, as a factual matter, that he did not commit the crime of conviction.'" *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999) (quoting *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir. 1995)). While petitioner complains about the quality of the evidence presented in support of his conviction, and has alleged that some of the testimony given was false, he was arrested as a passenger in a car he acknowledged as his, and a large quantity of drugs and a firearm were found in the car with him behind the glovebox on the passenger side of the car. (R. 4:121-25). He has not shown himself to be actually innocent of the crime of which he was convicted. Accordingly, the majority of petitioner's claim that his appellate counsel was ineffective for failing to raise certain claims, as well as his second, third and seventh grounds are procedurally barred.[2]

---

[2] Even if these claims were considered on their merits in an "abundance of caution," as in *Soria v. Johnson*, 207 F.3d 232, 249 (5th Cir. 2000), petitioner would not be entitled to relief. He has shown no prejudice for the failure of his appellate counsel to raise certain grounds because he has not shown a probability that he would have prevailed on appeal if these claims had been raised. As will be addressed later, he has shown no federal constitutional violation at his trial, so his third and seventh grounds are also without merit. Finally, in his second claim, petitioner is attempting to relitigate his Fourth Amendment claim on federal habeas review, and a claim that evidence obtained pursuant to an unconstitutional search and seizure was admitted at trial cannot be a basis for federal habeas relief if the state provided an opportunity for a full and fair litigation of the Fourth Amendment claim. *Williams v. Taylor*, 529 U.S. 362, 375 (2000); *Stone v. Powell*, 428 U.S. 465, 482 (1976). Petitioner's motion to suppress evidence seized during his arrest was litigated at trial and on appeal.

## III. APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996. Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Because petitioner filed his petition after its effective date, the Act applies.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions. Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law within the meaning of § 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). As for the "unreasonable application" standard, a writ must issue "if the state

court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## IV. SUFFICIENCY OF THE EVIDENCE

In his fifth ground for relief, petitioner asserts that the evidence is not legally sufficient to support his convictions.

Federal courts have extremely limited habeas review of claims based on the sufficiency of the evidence, and the standard for reviewing such claims is supplied by *Jackson v. Virginia*, 443 U.S. 307 (1979). In *Jackson v. Virginia,* the United States Supreme Court held that the correct standard of review when a state prisoner challenges the sufficiency of the evidence in a federal

habeas corpus proceeding is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 320. Moreover, the trier of fact has the responsibility of weighing the evidence, resolving conflicts in testimony, and drawing reasonable inferences from basic facts to ultimate facts. *Id.*

At trial, Deputy Chad Young of the Rockwall County Sheriff's department testified that after he stopped the car in which petitioner was a passenger, he searched behind the glove compartment of the car and found a purple bag with a small caliber gun inside, a white towel, a black pouch containing methamphetamine, two baggies containing a crystal-like substance, and a piece of paper with a small amount of marijuana in it. (R. 3:141, 147, 150-52, 155; R. 4:13, 18-19). He also found larger bags of heroin and cocaine in the same location. (R. 4:12-15). He located a red duffel bag on the passenger side in the back seat of the car that contained a large amount of rubber gloves, a digital scale with white powder residue, and small two-way radios. (R. 3:156; R. 4:22). In that same area, he also found a gray bag containing a lockbox that had syringes, a cell phone, and a spoon with heroin residue. (R. 3:157; R. 4:20-21, 24). A blue backpack in the trunk had men's clothes, a razor, a hand-held scanner, and scales with white powder residue. (R. 3:158). At the scene, petitioner told Deputy Young that none of the bags were his, but that the clothing inside of the blue backpack was his. (R. 3:158).

A chemist with the Texas Department of Public Safety testified regarding the weight and chemical composition of the drugs found in the car. (R. 4:164-75). Detective Jimmie Rico testified that, in his experiences as a narcotics officer, the items found in petitioner's car, including rubber gloves, digital scales, and the packages the drugs were found in, are consistent with someone dealing

narcotics. (R. 4:183-90). Ms. Debusk testified that petitioner gave her drugs, and that he and she had been taking speed and heroin provided by him on the night they were arrested. (R. 5:27, 51). She also testified that she believed that the drugs were petitioner's drugs, but that she did not see him put them in the car. (R. 5:31-2, 48). She acknowledged that she did not tell the truth when she told the officer at the scene that the drugs and gun were hers because she loved petitioner and did not want him to go to prison. (R. 5:56). Debusk also testified that petitioner owned the vehicle. (R. 5:57). Finally, petitioner testified that neither the drugs nor the gun were his, but he acknowledged that he had put a down payment on the car and had obtained insurance for it two weeks before he was arrested. (R. 5:110-111, 114-118, 128-30).

A person possesses a controlled substance if he exercises control, management, or care over the substance, and he knew it was contraband. Mere presence at the location where drugs were found is insufficient, by itself, to prove possession, but it is one of links to establish possession. *Evens v. State*, 202 S.W.3d 158, 161-62 (Tex. Crim. App. 2006). Other affirmative links include whether the contraband was in plain view, whether a defendant possessed other narcotics when arrested, whether other contraband or drug paraphernalia were present, whether the defendant owned or had the right to possess the place where the drugs were found, whether the location where they were found was enclosed, and whether a defendant's conduct indicated a consciousness of guilt. *Id*. at 162.

Viewed in the light most favorable to the verdict, the evidence presented at trial is sufficient to establish that any rational jury could have found beyond a reasonable doubt that petitioner's possessed the drugs that were found and that he had the intent to deliver, as there was testimony at trial that the car belonged to petitioner, that there was drug paraphernalia in the car, that most of the

drugs were found in an enclosed location behind the glovebox in the dashboard of the car, and that he had delivered drugs to Debusk in the past. As for disputed testimony, the jury, as the fact-finder, was responsible for weighing the evidence and resolving conflicts in testimony, and a court cannot substitute its view of the evidence for that of the fact-finder. *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985). After identifying the *Jackson* standard, the state appellate court denied this ground on direct appeal, and this denial was affirmed with the denial of petitioner's PDR. This denial is not an unreasonable application of federal law, and petitioner's fifth ground for relief should be denied.[3]

## V. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

In his first ground for relief, petitioner alleges that appellate counsel was ineffective for failing to designate for appellate review the videotape of the traffic stop and arrest that was taken from the patrol car.[4] Petitioner asserts that if he had, the state appellate court would have determined that the trial court erred in denying his motion to suppress the evidence seized from his car.

At trial, a video taken from Deputy Young's squad car was played for the jury while he explained what was occurring on the video, particularly the portions of it that were difficult to hear in the courtroom. (R. 3:125-41, 151-61). During his cross-examination of Deputy Young, petitioner pointed to alleged discrepancies between Young's recollection and testimony and the video itself and to the portion of the video when Debusk said that the drugs and gun were hers. (R. 4:76-81, 85-

[3] Petitioner did not raise a claim that the evidence was insufficient to support his conviction as a felon in possession of a firearm on direct appeal or in his first state writs. To the extent that he asserts this claim, it is unexhausted. It is also without merit because a gun was found in the same location in his car as the drugs, Debusk testified that the gun belonged to petitioner, and he has never disputed that he was a convicted felon at the time of his arrest.

[4] As found earlier, the remainder of petitioner's claims of ineffective assistance of appellate counsel are procedurally barred because they were raised in his second, successive state writs, and not his first writs.

87, 90).[5] The DVD of the video was also admitted into evidence at trial. (R. 3:124-25; R. 7:State's Ex. 31).

The Sixth Amendment to the United States Constitution provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. art. VI. The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To successfully state a claim of ineffective assistance of counsel, the prisoner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his or her defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *See* 466 U.S. at 696. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

Petitioner has failed to establish either that his appellate counsel was deficient or that the alleged deficiency prejudiced him on appeal. First, he has failed to establish that the video of his arrest was not part of the appellate record. The DVD was entered as an exhibit at trial and therefore was part of the trial record. Furthermore, the state appellate court's analysis of the evidence in its opinion on appeal suggests that the video was part of the appellate record, because that court refers to the exact time appellant's car was stopped, the amount of time that passed before the computer check showed that appellant had outstanding warrants, and the amount of time that passed before appellant gave the officer consent to search his car. *See Corro*, slip op. at 6. Given this record, petitioner has failed to clearly establish deficiency.

---

[5] Petitioner represented himself at trial.

Even assuming that counsel neglected to ensure that the video was part of the record, no prejudice has been shown. Petitioner argued on appeal that the trial court erred in denying his motion to suppress because the officer did not have reasonable suspicion to stop his car. The reasons Deputy Young gave for stopping the car are not on the video, however, because the video began when he pulled petitioner's car over. (R. 3:124-25; R. 4:40-42). There was no video record of petitioner turning and looking at the deputy or of the car swerving between lanes, and the absence of the video would have had no effect on this issue on direct appeal. While he evidently wanted his appellate attorney to use the video as supporting evidence for an argument that he did not consent to the search of his vehicle because he did not say "yes,", only that he "did not have a problem" with the search (doc. 2-1 at 3), and that Ms Debusk did not consent at all, this argument is frivolous. Petitioner concedes that he told the officer that he had "no problem" with a search of his vehicle. The state court's denial of this ground is not contrary to federal law, and petitioner's first ground for relief is without merit.

## VI. PROSECUTORIAL MISCONDUCT

In his fourth and sixth grounds, petitioner asserts that the prosecution committed misconduct at trial by: 1) knowingly using false testimony from Sarrah Debusk; and 2) withholding the original arrest report from Deputy Young, which he claims constitutes exculpatory evidence that establishes his innocence.

### A. False Testimony

In his fourth ground for relief, petitioner asserts that the prosecution knowingly used false testimony from Ms. Debusk because she testified that the drugs and gun found in the car belong to petitioner, but she had earlier stated that they belonged to her.

The Supreme Court has held that the presentation of false evidence at trial, as well as the admission into evidence at trial of unsolicited false evidence that is not corrected, violates a criminal defendant's due process rights if the reliability of a given witness may be determinative of guilt or innocence. *Napue v. Illinois*, 360 U.S. 264, 269 (1959). In order to prevail on a claim that his constitutional rights were violated by the presentation of false testimony, a petitioner must establish that: 1) the testimony was actually false; 2) the prosecution knew it was false; and 3) that it was material. *Napue v. Illinois*, 360 U.S. at 271. Knowledge of falsity is attributed to the prosecutor as the spokesperson for the government. *Giglio v. United States*, 405 U.S. 150, 154 (1972). The Supreme Court has also stated that a new trial is dictated only when the false testimony could, in any reasonable likelihood, have affected the judgment of the jury. *Napue*, 360 U.S. at 271.

Deputy Young testified that Ms. Debusk told him after he initially detained her and petitioner that the drugs and gun were hers. (R. 3:153). When Ms. Debusk later testified, she stated that this initial statement to Young was a lie to protect petitioner because she loved him and did not want him to go to prison. (R. 5:56). She also testified that the prosecutor had never asked her to tell anything but the truth and had never threatened her. (R. 5:60). The letters she and petitioner wrote to each other when they were in jail about someone named Andrew leaving the drugs in the car did not state the truth, and that the drugs were petitioner's. (R. 5:61-2). She claimed that she was telling the truth when she testified that the drugs in petitioner's car were his and that the letters did not contain the truth. (R. 5:80-82). She acknowledged that her testimony was not part of her plea bargain and probation and that she did not want to testify against petitioner but had been subpoenaed. (R. 5:78-79).

Petitioner has failed to establish either that Debusk's testimony at trial was false or that the

prosecution knew it was false. Her prior statements at the scene stating that the drugs and guns were hers are not evidence that her testimony was perjured. She testified that she had lied before to protect appellant, that the prosecutor had told her to tell the truth at trial, and that she was doing so. The fact that her testimony differed from petitioner's testimony is not evidence that the prosecution sponsored false testimony because conflicting testimony is to be resolved by the jury and does not prove that testimony was perjured. *See Koch v. Puckett*, 907 F.2d 524, 531 (1990). The fact that she did not wish to testify at petitioner's trial and was instead subpoenaed to do so is not evidence that her testimony was false. The state court's denial of this ground is not contrary to federal law.

**B. <u>Exculpatory Evidence</u>**

In his sixth ground, petitioner asserts that the prosecution withheld an original arrest report created by Deputy Young that establishes his innocence.

In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Supreme Court held that a prosecutor must disclose evidence to a criminal defendant if that evidence is favorable to the defendant and material to his guilt or punishment. "*Brady* claims involve 'the discovery, after trial of information which had been known to the prosecution but unknown to the defense.'" *Lawrence v. Lensing*, 42 F.3d 255, 257 (5th Cir. 1994). "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Evidence is material within the meaning of *Brady* only when there is a reasonable probability of a different result at trial had the evidence been disclosed. *Wood v. Bartholomew*, 516 U.S. 1, 5 (1995).

> The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair

> trial, understood as a trial resulting in a verdict of confidence. A "reasonable probability" of a different result is accordingly shown when the government's evidentiary suppression "undermines confidence in the outcome of the trial."

*Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (quoting *United States v. Bagley*, 473 U.S. 667, 678 (1985)). In other words, there must be "a 'significant possibility' of a different result to characterize the *Brady* materiality standard." *Strickler*, 527 U.S. at 300 (Souter, J., concurring).

Petitioner asserted in his state writs and in his federal petition that Deputy Young altered an original arrest report to add statements about events that did not occur in order to support the arrest and search of petitioner's vehicle. (*See* S.H.Tr.[WR-37,417-03]:62). He offers no support for this assertion that there was an original report that differed from a subsequent arrest report. Even if there was an original arrest report, petitioner has not shown that there is a reasonable probability that he would not have been convicted it been submitted to him at trial. The jury heard Deputy Young's testimony about his reasons for stopping petitioner's vehicle, petitioner's arrest, and the search of the vehicle. The jury saw the video of the search and arrest. The jury heard petitioner's testimony and Sarrah Debusk's testimony about the stop and the search. Petitioner has pointed to no alleged possible discrepancies between one arrest report and another that would undermine confidence in the jury's guilty verdicts. To the extent that he claiming that Deputy Young added reasons for the initial stop to a subsequent arrest report, his testimony was subject to an extensive cross-examination by petitioner at trial. Petitioner has not shown that there is a reasonable probability that he would not have been convicted if had it been shown that the deputy supplemented his initial report.[6] The

[6] Petitioner argued on direct appeal and in his PDR that the State withheld an exculpatory video of an initial interview with Debusk. To the extent that he is attempting to raise this ground as well, it has no merit. As the state appellate court noted, even if there was a video of Debusk's initial interview with the police at the station, both she and the police officers testified that she asserted her right to an attorney and the interview was terminated. *Corro*, slip op. at *6. No exculpatory, material evidence was therefore offered at the interview.

state court's denial of this grounds is not contrary to federal law, and petitioner's fourth and sixth grounds for relief should be denied.

## VII. EVIDENTIARY HEARING

Upon review of the pleadings filed herein and the proceedings held in state court as reflected in the state-court records, an evidentiary hearing appears unnecessary.

## VIII. RECOMMENDATION

The request for habeas corpus relief pursuant to 28 U.S.C. § 2254 should be **DENIED** with prejudice.

SIGNED on this 4th day of September, 2012.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE